SAMUEL W. HAIGHT, Respondent, v. ERASTUS V. JOYCE and PULASKI JACKS, Executors of WILLIAM A. WOODRUFF, deceased, Appellants.

Notes given for a gaming consideration are valid in the hands of a *bona fide* indorsee.

The case of Bryant v. Mead doubted.

Want of, or illegality of consideration between the original parties, does not render a bill or note void in the hands of a *bona fide* indorsee unless such bill or note be declared void by express statute.

A mere obiter dictum is not authority.

APPEAL from the District Court of the Fourth Judicial District.

Haight sued Woodruff's executors upon two promissory notes, both dated Decr. 2nd, 1850, one for $600, and the other for $1675, executed by Woodruff, payable five days after date to the order of one Lippincott, and by him indorsed to the plaintiff Decr. 3d, 1850 ; averring that Woodruff died between the 2nd and 10th of Decr. 1850, leaving a will by which he appointed the defendants his executors, who took out letters testamentary, &c., and notified the creditors to present their claims ; and that the plaintiff presented to them the notes, verified by his affidavit, &c.; and the defendants indorsed on the claim their rejection, &c.: and claiming judgment for the amount of the notes and in-

terest. The defendants answered, 1st, Denying the complaint. 2nd, That the notes were given by Woodruff for money lost at play, &c.

The cause was tried by this Court without a jury. The plaintiff's case was admitted. In support of the second plea, the defendants proved, by Lippincott, that the notes were given partly for money loaned by him to Woodruff, to be played with at cards, and partly for money lost by Woodruff to Lippincott, in playing cards. The Court found for the plaintiff, for the amount of the notes and interest: and judgment was rendered accordingly. The defendants appealed.

*Chetwood*, *Edwards*, *Rose* and *Turk* for the appellants. 1st, That a note given for money lost at play is void, was decided by this Court, in Bryant v. Mead. If part of an entire contract is void, the whole is void. Chit. Cont. 664, in notes, and cases there cited; 8 Johns., 255; Hind v. Chamberlain, 6 N. Hamp. 225; Carleton v. Whitiker, 5 Ib., 196; Roby v. West, 4 Ib. 7 T. R. 201; 10 B. & C. 664; 5 Taunt. 780; 3 Ib., 226; 3 Camp. 9. Again, a note given for money lent to game with, is absolutely void, as well as a note given for money lost at play. 2nd, The notes being void, they are of no validity in the hands of a *bonâ fide* indorsee: and this applies as well where the notes are void by the common law, as where they are made so by statute. Boyer v. Bampton, 2 Str., 1155; Lowe v. Waller, 2 Doug., 744; 8 T. R. 392; 1 Saund. 295, b, and notes; 1 East, 93; 1 Stark. 385; 2 B. & Ald. 590; 8 Price, 288; 3 Johns. Cas. 206; 2 Caine's Rep. 150; 10 Johns. 185; 10 Mass. 121; 3 Day, 268; Halsted's Dig. 888; 1 Bay, 249; 12 Johns. 310.

*H. H. Haight* for respondent. 1st, A gaming debt is not void at common law, except in cases where particular kinds of gaming are against public policy, as betting on elections; betting at a public gaming house, &c., 4 Bac. Abr. 450, and cases cited; Story on Cont., secs. 565–6, and note; 1 Bouv. L. D., 332; 602–3. The English statutes against gaming are not in force here. Bryant v. Mead was a case of money won at a public gaming house. Private gambling is no more against public policy than mercantile speculations. Our statutes do not prohibit gambling; but raises a revenue by licensing it. 2nd, Illegality of

consideration is no defence to a negotiable note in the hands of a *bonâ fide* holder, unless there be a statute rendering the security void in the hands of third persons. Chit. Bills, 95; Story on Bills, sec. 189, &c. and notes; 3 Kent, 79, 80; 3 U. S. Dig. 278; 6 Wend. 615.

Justice MURRAY delivered the opinion of the Court. The question presented for our consideration in this case is, whether payment of a negotiable note, in the hands of an innocent indorsee, can be avoided on the ground that it was given for money lost or won at play. It is contended by the appellants, that gaming contracts are void at common law; and that a note given for such consideration, being void between the original parties, is void in the hands of an innocent holder. The case of Bryant v. Mead, decided by this court, is relied upon as authority to sustain the position, that these contracts were void by common law. That was a suit between the original parties: and the fact that the money was lost at a public gaming house, the amount, and all the circumstances, were taken into consideration. The correctness of that decision has since been doubted; and if the subject were now open for consideration, I should be inclined to question it. But granting these contracts were void at common law, let us inquire how far this principle affects the present case.

Although want or illegality of consideration may be inquired into in a suit upon a bill or note between the original parties, by the general mercantile law, where these securities have passed into the hands of third persons without notice, the maker is estopped from setting up such defence. This peculiar system of credit is favoured by the law; and a rule requiring the indorsee of every bill or note to inquire into the consideration would retard commercial transactions, and in the language of Lord Kenyon, "shake paper credit to its foundation." In the case of Boyer *v.* Brampton, it was held that the innocent indorsee of a gaming note could not recover in an action against the drawer. This decision was based on the statute of 9 Anne, which declares such notes void to all intents and purposes whatever. It was considered that the words "all intents and purposes whatever" made the statute apply to notes in the hands of third persons; and it was said if the lender was allowed to indorse it, it would be mak-

ing it of some use to him. This decision was subsequently questioned by the bar; and Lord Mansfield, in the case of Peacock v. Rhodes, said that it was well settled, "that the holder of a promissory note coming fairly by it, has nothing to do with the original contract between the parties, except in the single case, (which is a hard one, but which has been settled,) of a note for money won at play." Although money contracts were void at common law for illegality, &c., of consideration, it is impossible to find a single case in which a note given for an illegal consideration has been held void in the hands of third persons, except by operation of statute. In the case of Vallette v. Parker, 6 Wendell, the court lay down the rule, that the want or illegallity of consideration of a note transferred before due cannot be shown, in an action by a *bona fide* holder, except where the note is declared void by statute.

It is contended by the appellants, that the rule must be the same, whether the note be void by statute or common law. In support of this proposition, 1 Bay's Reports, 249, is cited. That was an action upon a note given for compounding a felony. The Court say, that it makes no difference whether the note was void by common law, or made so by statute : but this may be considered as an *obiter dictum*, as the decision of the court does not rest upon that principle, but turns on the fact, that the note was indorsed after it became due. The case of Wiggins v. Bush, 12 Johns., cited to sustain the same principle, turned upon a similar point; and the Court remarked, that the statute evidently intended to make such notes void, in whosesoever hands they might come.

From the general tone of these decisions, as well as the policy of the commercial law, I am of opinion, that these contracts can only be held void in the hands of third persons when made so by express statute. Any other decision would destroy confidence in commercial transactions, and open a wide door to fraud and perjury.

Judgment affirmed.